UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
| Plaintiff, | : Civil Action No. 23-cv-3314 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| UNIVAR SOLUTIONS INC., | : **SECURITIES EXCHANGE ACT OF** |
| CHRISTOPHER D. PAPPAS, DAVID C. | : **1934** |
| JUKES, JOAN A. BRACA, MARK J. | : |
| BYRNE, DANIEL P. DOHENY, RICHARD | : **JURY TRIAL DEMANDED** |
| P. FOX, RHONDA GERMANY, VARUN | : |
| LAROYIA, STEPHEN D. NEWLIN, KERRY | : |
| J. PREETE, and ROBERT L. WOOD, | : |
| | : |
| Defendants. | : |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Univar Inc. ("Univar or the "Company") and the members Univar's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Univar by affiliates of Apollo Global Management, Inc. ("Apollo").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on April 13, 2023 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Windsor Merger Sub, Inc. ("Merger Sub"), an indirect wholly owned subsidiary of Windsor Parent, L.P. ("Parent"), will merge with and into Univar, with Univar surviving the merger as an indirect wholly owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on March 13, 2023 (the "Merger Agreement"), each Univar stockholder will receive $36.15 in cash (the "Merger Consideration") for each Univar share owned. Merger Sub and Parent are both affiliates of funds managed by affiliates of Apollo.

3. As discussed below, Defendants have asked Univar's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, Goldman Sachs & Co. LLC ("Goldman Sachs") and Deutsche Bank Securities, Inc. ("Deutsche Bank" and together with Goldman Sachs, the "Financial Advisors") in support of their fairness opinions.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Univar's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Univar stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Christopher D. Pappas has served as a member of the Board since 2015 and is the Chair of the Board.

11. Individual Defendant David C. Jukes has served as a member of the Board since 2018 and is the Company's President and Chief Executive Officer.

12. Individual Defendant Joan A. Braca has served as a member of the Board since 2018.

13. Individual Defendant Mark J. Byrne has served as a member of the Board since 2014.

14. Individual Defendant Daniel P. Doheny has served as a member of the Board since 2016.

15. Individual Defendant Richard P. Fox has served as a member of the Board since 2007.

16. Individual Defendant Rhonda Germany has served as a member of the Board since 2017.

17. Individual Defendant Varun Laroyia has served as a member of the Board since 2022.

18. Individual Defendant Stephen D. Newlin has served as a member of the Board since 2014.

19. Individual Defendant Kerry J. Preete has served as a member of the Board since 2018.

20. Individual Defendant Robert L. Wood has served as a member of the Board since 2016.

21. Defendant Univar is a company incorporated under the laws of the State of Delaware and maintains its principal offices at 3075 Highland Parkway, Suite 200, Downers Grove, Illinois 60515. The Company's stock trades on the New York Stock Exchange under the symbol "UNVR."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

23. The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A.   **The Proposed Transaction**

24.   Univar distributes commodity and specialty chemical products, and provides related services worldwide. It offers epoxy resins, polyurethanes, titanium dioxide, fumed silica, esters, plasticizers, silicones, and specialty amines; ingredients for cleaners, detergents, and disinfectant products; and base stocks, performance-enhancing additives for lubricants and metalworking fluids. The Company also distributes specialty and basic chemicals, and ingredients used in skin and hair care products; and commodity and specialty products for meat processing, baked goods, dairy, grain mill products, processed food, carbonated soft drinks, fruit drinks, and alcoholic beverage markets, as well as provides excipients, solvents, reactants, active pharmaceutical ingredients, and intermediates to pharmaceutical ingredient producers. In addition, it offers chemical products for use at various stages of production, from sap stain prevention to pulp and paper manufacturing; and chemistries and products used to sanitize, balance, and supplement municipal and industrial water. Further, the Company provides chemicals to midstream pipeline and downstream refinery operators, as well as chemicals and services to upstream oil and gas sector for offshore production, oil extraction, and waste management activities. Additionally, it offers transportation and warehousing services, chemicals and hazardous materials handling, waste management services, inventory management, and blending, mixing, and repackaging services. Univar distributes its products through warehouse and direct-to-consumer delivery channels. The Company was formerly known as Univar Inc. and changed its name to Univar Solutions Inc. in September 2019. Univar was founded in 1924 and is headquartered in Downers Grove, Illinois.

25.   On March 14, 2023, the Company and Apollo jointly announced the Proposed Transaction:

DOWNERS GROVE, Ill. and NEW YORK, March 14, 2023 /PRNewswire/ -- Univar Solutions Inc. (NYSE: UNVR) ("Univar Solutions" or the "Company") and Apollo (NYSE: APO) announced today that funds managed by affiliates of Apollo (the "Apollo Funds") have entered into a definitive merger agreement to acquire the Company in an all-cash transaction that values the Company at an enterprise value of approximately $8.1 billion. The transaction includes a minority investment from a wholly owned subsidiary of the Abu Dhabi Investment Authority ("ADIA").

The agreement provides that Univar Solutions shareholders will receive $36.15 per share in cash, which represents a 20.6% premium to the Company's undisturbed closing stock price on November 22, 2022. The transaction consideration also represents a premium of 33.6% to the volume-weighted average price of Univar Solutions for the 30 trading days ending on November 22, 2022.

"We are pleased to have reached this agreement with Apollo, which will provide immediate and certain cash value for Univar Solutions shareholders," said Chris Pappas, chairman of the Univar Solutions Board of Directors (the "Board"). "The Board's decision follows a comprehensive review of value creation opportunities for Univar Solutions. We are confident this transaction is the right path forward and achieves our goal of maximizing value for Univar Solutions shareholders."

David Jukes, president and chief executive officer of Univar Solutions, said, "Over the last three years, we have transformed the Company, putting the customer at the center of all we do, which has solidified our position as a leading value-added service and solution provider. This transaction reflects the success of our strategy and delivers substantial value to our shareholders. It is a testament to the tireless efforts of my colleagues, whose commitment to our purpose of helping keep our communities healthy, fed, clean, and safe has enabled our success. In Apollo, we are pleased to gain a partner to support continued investment in our portfolio and I look forward to working closely with their team as we grow Univar Solutions and serve our key suppliers and customers globally."

Apollo Private Equity Partner Sam Feinstein said, "Univar is a global leader in specialty chemicals and ingredients distribution, fueling a vast array of industries with innovative, safe and sustainable solutions. In recent years, David and his team have made tremendous progress enhancing the customer experience, and we believe Univar can accelerate its long-term strategy as an Apollo Fund portfolio company. We look forward to leveraging our

extensive experience in the sector to support management in this exciting next phase."

**Transaction Details**

The merger agreement, which has been unanimously approved by the Univar Solutions Board of Directors, provides that Univar Solutions shareholders will receive $36.15 in cash for each share of common stock they own.

The transaction will be financed with equity provided by the Apollo Funds, a minority equity investment from a wholly owned subsidiary of ADIA and a committed debt financing package.

The transaction is expected to close in the second half of 2023, subject to customary closing conditions, including approval by Univar Solutions shareholders and receipt of regulatory approvals. The transaction is not subject to a financing condition.

Upon completion of the transaction, shares of Univar Solutions common stock will no longer trade on the New York Stock Exchange, and Univar Solutions will become a privately held company. Univar Solutions will continue to operate under the Univar Solutions name and brand and maintain a global presence.

The foregoing description of the merger agreement and the transactions contemplated thereby is subject to, and is qualified in its entirety by reference to, the full terms of the merger agreement, which Univar Solutions will file with the U.S. Securities and Exchange Commission as an exhibit to a Current Report on Form 8-K.

**Advisors**
Goldman Sachs & Co. LLC and Deutsche Bank Securities Inc. are serving as financial advisors to Univar Solutions and Wachtell, Lipton, Rosen & Katz is serving as lead counsel to Univar Solutions.

Paul, Weiss, Rifkind, Wharton & Garrison LLP is serving as legal counsel to the Apollo Funds.

J.P. Morgan Securities LLC is acting as lead financial advisor to Apollo. BMO Capital Markets, BNP Paribas Securities Corp., Credit Suisse, Guggenheim Securities, LLC, HSBC Securities (USA) Inc., Mizuho Securities USA LLC, RBC Capital Markets, LLC and Wells Fargo Securities, LLC are also serving as financial advisors to Apollo.

>     Cleary Gottlieb Steen & Hamilton LLP is serving as legal counsel to ADIA.

* * *

26. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Univar's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

27. On April 13, 2023, Univar filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

28. The Proxy Statement fails to provide material information concerning financial projections by Univar management and relied upon the Financial Advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts, the Univar Long Range Strategic Plan and the Univar Standalone Projections (collectively, the "Company

Projections") and provided them to the Board and the Financial Advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Univar management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

29. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

30. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated.

> Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

32. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metric included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Goldman Sachs' Financial Analyses*

33. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of illustrative terminal values for the Company; (ii) the inputs and assumptions underlying the selected range of terminal year exit enterprise value to last twelve months Adjusted EBITDA multiples of 7.0x to 10.0x; (iii) the inputs and assumptions underlying the implied perpetuity growth rates ranging from 0.4% to 5.4%; (iv) the inputs and assumptions underlying the discount rates ranging from 8.5% to 11.5%; (v) the weighted cost of capital of the Company; and (vi) the number of shares of Company stock outstanding on a fully diluted basis.

34. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the range of illustrative next twelve month enterprise value to EBITDA of 7.0x to 9.0x to estimates of the

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

10

Company's Adjusted EBITDA as of December 31 for each of the fiscal years 2024 to 2026 reflected in the Univar Standalone Projections; (ii) the Company's net debt for each of the fiscal years 2023 to 2025; (iii) the projected year-end number of fully diluted outstanding shares of Univar common stock for each of fiscal years 2023 to 2025; (iv) the cumulative dividends per share of Company common stock expected to be paid to holders of Company common stock through the end of each of fiscal years 2023 to 2025; and (v) the inputs and assumptions underlying the illustrative discount rate of 11.5%.

35. With respect to Goldman Sachs' *Selected Transactions Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for each transaction selected by Goldman Sachs for the analysis; (ii) the basis for selecting the reference range of implied transaction value/last twelve months Adjusted EBITDA multiples of 8.3x to 10.6x; (iii) the Company's net debt as of December 31, 2022 and December 31, 2022 excluding cash in connection with the Company's two acquisitions announced in the first fiscal quarter of 2023 respectively; (iv) the number of fully diluted outstanding shares of Univar common stock as of December 31, 2022.

36. With respect to Goldman Sachs' *Premia Paid Analysis*, the Proxy Statement fails to disclose: (i) the premia paid in the selected transactions; (ii) the basis for selecting the representative range of premia of 21% to 49%.

*Omissions and/or Material Misrepresentations Concerning Deutsche Bank's Financial Analyses*

37. With respect to Deustche Bank's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal value for the Company; (ii) the inputs and assumptions underlying the selected range of multiples of 7.0x to 9.5x; (iii) the inputs and assumptions underlying the discount rates ranging from 9.5% to 11.5%; (iv) the weighted cost of capital of the Company; and (v) the number of shares of Company stock outstanding on a fully diluted basis.

11

38. With respect to Deutsche Bank's *Illustrative Discounted Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the range of multiples of 7.0x to 9.0x; (ii) the Company's net debt for each of the fiscal year 2024; and (iii) the inputs and assumptions underlying the discount rate of 12.5%.

39. With respect to Deutsche Bank's *Precedent Selected Transactions Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics and multiples for each transaction selected by Deutsche Bank for the analysis; and (ii) the basis for selecting the reference range of multiples of 8.0x to 10.5x.

40. With respect to Deutsche Bank's *Selected Companies Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics and multiples for each company selected by Deutsche Bank for the analysis; and (ii) the basis for selecting the reference range of multiples of 7.0x to 9.0x to the estimate of 2023 Adjusted EBITDA and multiples of 6.5x to 8.5x to the estimate of 2024 Adjusted EBITDA.

41. With respect to Deutsche Bank's *Equity Research Analyst Price Targets*, the Proxy Statement fails to disclose: (i) the eight selected equity research analysts observed; and (ii) the price targets published by the eight selected analysts.

42. With respect to Deutsche Bank's *Premiums Paid Analysis*, the Proxy Statement fails to disclose: (i) the premiums paid in the selected transactions; (ii) the basis for selecting the representative range of premia of 23% to 47%.

43. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision

regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

47. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

13

misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

48. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

49. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51. The Individual Defendants acted as controlling persons of Univar within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Univar, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision making of Univar, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Univar, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

54. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 20, 2023                                             **MELWANI & CHAN LLP**

                                                           By:  */s/ Gloria Kui Melwani*
                                                                   Gloria Kui Melwani (GM5661)
                                                                   1180 Avenue of the Americas, 8th Fl.
                                                                   New York, NY 10036
                                                                   Telephone: (212) 382-4620
                                                                   Email: gloria@melwanichan.com

                                                                   *Attorneys for Plaintiff*